## CONYNGHAM SCHOOL DISTRICT *v.* THE COUNTY OF COLUMBIA.

1. School districts are entitled, under the act of 8 May, 1854, to the FULL AMOUNT of all taxes collected on unseated lands, returned by the collectors of the school tax to the commissioners of the county. No deduction can be made on account of commission to the County Treasurer.

2. Settlements of treasurer's accounts by the county auditors allowing a special or other commission out of moneys collected for a school district are not binding upon the district. School districts and other creditors of a county, are not parties to such settlements, and therefore are not affected by them.

3. Where a debt against a county for money had and received is presently payable on demand, and the party entitled to receive the money neglects for more than six years to make demand, and there was no reason for the delay, the statute of limitations is a bar to the recovery of such a debt.

**Case stated.**

Opinion delivered December 31, 1873, by

ELWELL, P. J. The best exponents of the legislative mind are the words of the statute where they are free from ambiguity. Where they are not, we must resort to legislation on kindred subjects, to the spirit of our institutions, and the habits of community, to ascertain the intent of the legislature. Dwarris on Statutes 193—196, 1 Harris 166.

Guided by this well established canon of construction, there is no difficulty in ascertaining the legislative mind upon the subject in hand, to wit : the right of county commissioners to deduct from money collected for a school district on unseated lands such sum as they may allow to the treasury of the county as a commission. It is provided by the 34th Section of the act of 8th May, 1854, Purdon's Digest 246, that, whenever a school tax assessed on unseated lands in any district shall not be voluntarily paid by the owner thereof, the collector shall certify the same to the proper county commissioners, who shall enforce the collection thereof, with the taxes assessed on unseated lands for county purposes; and when so collected shall be paid to the district treasurer, by orders drawn on the county treasury.

The words of this statute are not only free from ambiguity, but they are also positive and mandatory. The *whole tax* is to be certified—the collection *thereof* is to be enforced, and when collected *shall* be paid over to the district.

The statute is of itself so clear and plain that it admits of no argument to prove its meaning. But by reference to legislation on kindred subjects we shall find, that in all cases where money is directed to be collected for a township or district by the county, the *amount* so collected is to be

paid, unless provision is expressly made for deducting the expense of collecting from the fund.

The imposition and collection of taxes are wholly regulated by statutes. Taxes on unseated lands, not being a charge upon or collectable from the owner, but only by proceeding against the land itself, provision was early made in the history of the State for collecting taxes on such lands for county proposes. Township officers had no means of collecting an unseated land tax, nor were they authorised to certify the amount levied for any purpose, until the passage of the act of 6th April, 1802—3 Smith's laws 516. By that act, supervisors were authorised to return to the county commissioners the road taxes laid by them on unseated lands. Whereupon the commissioners were required at *once* to draw an order for the amount of the tax, and the county treasurer was required to pay such order *forthwith*. By the act of 30 March, 1811, (still in force) the law was so far changed as to relieve the county from payment until the money was collected; but the provision was again repeated that the order should be drawn for the *amount* of the tax and paid when the money was collected. 5 Smith laws, 251.

The first act of assembly providing for a general system of education in this State was passed on the 13th June, 1836, pamphlet laws 525. By the 7th section provision was made for collecting taxes on unseated land for school purposes, and payment of the same to the proper district, in the same language employed in the act of 1854. This provision, however, only applied to accepting districts. As to non-accepting districts, the county commissioners were required by the 16th section of the same act to collect from them an amount necessary to educate the poor gratis, providing, however, that the expense incurred thereby should be paid out of the fund levied on the district.

It is a maxim of the law that the naming of one thing excludes another. By expressly providing for the expenses of collecting the taxes levied for a non-accepting district, the idea of imposing them on accepting districts is clearly excluded.

In every statute which requires the county treasurer to collect money for the commonwealth he is authorized to retain his commission out of the money collected. But in regard to county matters he is required to receive all money due or accruing to the county—to pay out the same on orders drawn by the commissioners, and to pay over to his successor all the money in his hands. For this service he is to receive a certain amount per cent. to be fixed by the commissioners and auditors. Money collected from unseated lands for school taxes is clearly "money accruing to the county." The commissioners are requested "to enforce their collection." They are to be paid out on orders drawn upon the county treasurer. They are paid into the treasury, and differ from other funds only in this—that they must be applied to a special object. Potter county

*v.* Oswayo township, 11 Wright 163. It is clearly shown by Judge White, whose opinion in this case was affirmed by the supreme court, that the county must respond for the delinquencies of the county treasurer in respect to taxes collected for townships. The bond of the treasurer is to the county. Townships and school districts have no security direct from the treasurer. They must look to the county or be without redress. It is unnecessary to say more upon the subject of such taxes being county funds, as the point is expressly ruled in the case just cited. It follows that it is the business of the commissioners to draw orders for the full amount of claims against the county, and of the treasurer to pay them in full. In the settlement of his accounts the commissioners must see to it that he is charged with all money received from whatever source. If he fails thus to account, or if the auditors allow him as commissions or otherwise more than he is entitled to, the county should appeal from the settlement ; if it does not the county will be concluded as between it and the treasurer. Although all money received by the treasurer is considered as being in the county treasury, yet the accounts should be kept separately with the several school districts for the sake of convenience.

The practice in the several surrounding counties in regard to unseated land tax collected for townships and school districts is so variant that it affords no aid in giving construction to the act of 1854.

In Northumberland county, as I am informed from an official source, "all money collected by the treasurer on unseated lands remains in the hands of the treasurer, and he pays it out to the president of the school boards. This fund does not go into the county fund as the treasurer is responsible to the different boards as if it were his own fund and retains $2\frac{1}{2}$ per cent. as his fee, taking a receipt for the full amount."

In Luzerne county, as I am informed by the clerk to the commissioners, "the commissioners do not draw orders on the treasurer for school, road or poor taxes collected on unseated lands. The proper person as school or township treasurer receipts to the county treasurer for the amount less *five* per cent, of such tax collected."

In Lycoming county a similar practice prevails. No orders are drawn by the commissioners for road or school money. The treasurer deducts *five* per cent. and pays the balance to the district or township treasurer.

In Columbia county the treasurer is charged with the money received less *eight* per cent. and pays out that which is charged against him on orders drawn by the commissioners.

In Schuylkill county the clerk states, "the commissioners draw their order in favor of the proper school district for the whole amount of the tax paid into the treasury, (for that district) as the law requires. He gets his per cent. on all money received by him and paid out during the year." From these statements, coming from counties having a large amount of unseated land tax to disburse, it will be seen that there is scarcely any uni-

formity in the practice of the several offices, nor in the amount improperly withheld from the school district. By following a practice adopted by some interested officer of former years instead of taking the plain words of the statutes for a guide, errors are often perpetuated and come to be considered as law. But practice which is in the very face of a statute cannot be allowed to annul the law. The practice which is regulated by what "the law requires" is the only one which can affect the rights of parties having claims against a county.

The proper and *only* correct mode of proceeding is to charge the treasurer with all the money received by him, and give him credit for county orders returned and the commission allowed.

In this manner the treasurer obtains credit for all he is entitled to, and his commission is not taken from the amount which the law declares shall be paid over to school districts for the meritorious purpose for which it was allowed to be collected. And I may here add, that in the absence of a law authorizing it, the commissioners have no more right to deduct for services of the treasurer than they would have to charge for services of their clerk in furnishing to the school district a copy of the last adjusted assessments. It is a duty enjoined by law, and is compensated for out of the county treasury. But if the law allowed payment of the treasurer's commission to be made specially out of the fund collected for the school district, it is difficult to understand why it should be much larger than that paid for like services in collecting taxes for county purposes proper.

It appears by the case stated that annual settlements have been made by the county auditors with the treasurers who have withheld their commissions from the fund collected for the school district, in which settlements they are charged only with the balance of the money after such deduction, and that for such balance orders have been drawn by the commisioners, upon which the money has been paid. These settlements not having been appealed from, the counsel for the county contends that they are conclusive upon the school district, and bar a recovery in an action of law.

In my judgment this cannot avail as a defence, for the simple reason that the school district was no party to the settlements. Alcorn *v.* Commonwealth, 16 P. F. Smith 172. The county auditors constitute a special tribunal of limited jurisdiction. They are authorized to settle the accounts between the sheriff, coroner, treasurer and commissioners and the county; but *not* between the county and its creditors. From their adjudications, no appeal can be taken, except by the county or the officer. No other party has occasion to appeal, because no other party is bound by their judgment.

In this case no notice of the settlements was given to the school district, and for that reason, if there were no other, they are of no force or effect. Wilson *v.* Clarion county, 2 Barr 17, Blackmore *v.* Allegheny County, 1 P. F. Smith 160.

The remaining question submitted is, whether the statute of limitations is a bar to the recovery of money received by the county more than six years before suit brought.  The county received the taxes belonging to the school district in each of the even years 1860 to 1872 inclusive, and paid to the district in each year by orders drawn on the treasurer, the amount received, less eight per cent.  This suit was brought in November 1872, more than twelve years after the first money was received, and more than six years after the receipt in 1866.  A special demand was made for the amount of the commission in July 1872.

It is evident from the facts stated, that the officers of the school district knew the amount of their transcripts, and that the money had been collected thereon, as they obtained orders from the commissioners in every instance shortly after the money was collected, less the commission.

Counties, like persons, are subject to the statute of limitations.  The maxim that time does not run against or bar the sovereign does not apply to them.   Glover v. Wilson, 6 Barr 290.   Evans v. Erie City, 16 P. F. Smith 228.   If they may be barred by the statute, they may plead it as a defence.

The claim of the plaintiff here is not, as argued by counsel, based upon an implied contract, arising remotely out of the compact of government.   It is simply a demand for money had and received for the recovery of which assumpsit would lie upon an implied promise to pay on demand.   It is contended that if this be so, the statute did not begin to run until after demand, inasmuch as no action could be sustained before that against the county.   This is unquestionably correct, so far as regards the necessity for a demand before suit brought.   But it does not follow that if a party making a claim is guilty of great delay, that he can postpone at will the operation of the statute.   Even where the parties sustain the relation of attorney and client, or agent and principal, delay will bring the party who ought to have demanded an account or settlement, within the operation of the statute.   "Though in many instances a demand may be necessary before suit brought, yet the want of it when it is the party's own neglect, will not stop the running of the statute."   Alexander v. Lackey, 9 Barr 120—Campbell v. Boggs, 12 Wright—Pittsburg & Conn. R. R. Co. v. Byers, 8 Casey 22—Rhines v. Evans, 16 P. F. Smith 192— Whethan v. Penna. & N. Y. Canal and R. R. Co., 5 Legal Gazette 78.

This case is within the principle of these decisions so far as regards the claim for money received by the county more than six years before suit brought.   For the several sums unpaid, received since 1866, the plaintiff is entitled to judgment.

Judgment for the plaintiff for the sum of two hundred and fifty-nine dollars and thirty cents.

S. Knorr and A. C. Smith, Esqs., for plaintiff; J. G. Freeze and R. F. Clark, Esqs., for defendant.